COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-181-CR
 
 
MATTHEW 
DEVIN YOCOM A/K/A                                            APPELLANT
MATTEW 
DEVIN YOCOM
 
V.
 
THE 
STATE OF TEXAS                                                                  STATE
 
------------
 
FROM 
COUNTY CRIMINAL COURT NO. 10 OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
I. INTRODUCTION
        A 
jury found Matthew Devin Yocom (“Yocom”) guilty of driving while intoxicated 
(“DWI”), and the trial court assessed punishment at 120 days’ confinement, 
probated for two years, and a $700 fine. On appeal, Yocom advances fourteen 
points of error. We affirm.
II. FACTUAL BACKGROUND
        The 
evidence shows Euless Police Officer Scott Peterson was conducting a DWI patrol 
in the early morning of October 24, 2002. At around 12:50 a.m., Officer Peterson 
spotted a truck stopped in a bank parking lot near an ATM machine. Officer 
Peterson noted that the truck had not been there during his earlier patrol, 
which occurred around 12:20 or 12:30 a.m. Officer Peterson then turned his 
attention to another vehicle that had passed him and committed some traffic 
violations. Around fifteen minutes later, after stopping the other vehicle and 
determining that the driver was free to leave, Officer Peterson came back to the 
location of the truck.
        Officer 
Peterson noticed that the truck’s motor was running; the break lights were on, 
which made Officer Peterson assume the driver’s foot was on the break; and a 
male subject, whom Officer Peterson later identified as Yocom, was seated alone 
in the driver’s seat. After arriving at the vehicle’s driver’s side door, 
Officer Peterson saw that Yocom was slumped over the steering wheel with his 
head down, the truck was in drive, and his emergency break was engaged. Officer 
Peterson knocked and then banged on the window and called to Yocom in an attempt 
to rouse him. Moments later, Yocom lifted his head and sat in a “daze” 
looking at Officer Peterson, who instructed Yocom to open the door or roll down 
the window and put the car in gear, but Yocom continued to stare at Officer 
Peterson. Officer Peterson noticed that Yocom’s eyes had a glazed look and 
were bloodshot and watery. Minutes later, after Officer Peterson continued to 
ask Yocom to comply, Yocom turned on his windshield wipers, turned both turn 
signals on and off, put his truck in reverse, and flashed his break lights on 
and off before Officer Peterson was able to walk Yocom through putting his truck 
in park and rolling down his window. Officer Peterson then had Yocom step out of 
the vehicle.
        In 
the course of performing a number of field sobriety tests, Yocom admitted that 
he had driven from a bar in Dallas called the Somba Room, where he had consumed 
beer and drinks containing vodka.[1]  Yocom also 
informed Officer Peterson that he pulled over in the parking lot because he felt 
sick and was driving “bad.” Moreover, when Officer Peterson asked Yocom if 
he pulled over because he did not want to receive a DWI, Yocom responded, 
“Yes.” After noting several signs of intoxication during the course of the 
tests, Officer Peterson believed Yocom was intoxicated. Upon searching Yocom’s 
vehicle, Officer Peterson did not find any open containers of alcohol. Officer 
Peterson also testified that the truck was registered to Yocom.
        Because 
Yocom was a diabetic, Officer Peterson permitted him to test his blood sugar 
with a portable test kit. As a safety precaution, Officer Peterson called the 
Euless paramedics to the scene, who recommended that Yocom have further 
evaluation done at the hospital. Yocom was then transported by ambulance to the 
hospital. Officer Peterson accompanied him.
        At 
the hospital, Officer Peterson provided Yocom with a statutory warning and 
requested a sample of his blood. Yocom refused. Yocom signed the hospital’s 
“Universal Consent for Treatment” where Yocom “consent[ed] to and 
authorize[d] testing, treatment, and/or hospital care as ordered by [his] doctor 
and [the doctor’s staff]” and the hospital’s “Admission 
Acknowledgments” that informed him that his medical records might be released 
to “any other person or entity as required or allowed by state and federal 
law.” Nurse Tracy Langley testified that she drew a blood sample from Yocom 
for medical purposes only and not at the behest of the police. She also 
testified that Yocom was not under arrest at the hospital, was conscious when he 
signed the forms, never refused medical treatment, and very willingly and 
cooperatively handed his arm out for her to draw his blood. Yocom’s medical 
records, which showed he had a blood-alcohol content of approximately 0.2, were 
later obtained by the State through a subpoena duces tecum.
II. LEGAL AND FACTUAL SUFFICIENCY OF EVIDENCE
        In 
his first two points, Yocom contends that the evidence was legally and factually 
insufficient to sustain the jury’s verdict that he “operated” a motor 
vehicle as alleged in the information. See Tex. Penal Code Ann. § 49.04(a) 
(Vernon 2003) (requiring the State to prove the accused operated a motor vehicle 
in a public place while intoxicated). In reviewing the legal sufficiency of the 
evidence, we determine whether, considering the evidence in the light most 
favorable to the verdict, any rational trier of fact could have found beyond a 
reasonable doubt that Yocom operated the motor vehicle. See Jackson v. 
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden v. State, 
55 S.W.3d 608, 612 (Tex. Crim. App. 2001). In reviewing the factual sufficiency 
of the evidence, we must determine whether a neutral review of all the evidence, 
both for and against the finding, demonstrates that the proof of guilt is so 
obviously weak as to undermine confidence in the verdict, or the proof of guilt, 
although adequate if taken alone, is greatly outweighed by contrary proof. Johnson 
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).
        While 
there is no statutory definition of “operate,” the Texas Court of Criminal 
Appeals has held, “To find operation under [the DWI] standard, the totality of 
the circumstances must demonstrate that the defendant took action to affect the 
functioning of [the] vehicle in a manner that would enable the vehicle’s 
use.” Denton v. State, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995). The 
Texas Court of Criminal Appeals has also noted that, while driving involves 
operation, operation does not necessarily involve driving. Id. at 389.
A. Legal Sufficiency of Operation
         Turning 
to the legal sufficiency of the evidence offered to prove Yocom’s operation of 
a motor vehicle, the record shows Yocom (1) admitted to driving his truck from a 
bar in Dallas, where he had consumed alcohol, to the parking lot where he was 
found; (2) admitted that he had pulled off the road because he felt sick, had 
driven “bad,” and had been afraid of getting a DWI; (3) had not been in the 
parking lot for more than 45 minutes; (4) was intoxicated; and (5) had no 
alcoholic beverage containers in his truck.
        Regardless 
of whether Yocom operated his truck in Officer Peterson’s presence, a rational 
trier of fact could have found beyond a reasonable doubt that Yocom operated his 
truck prior to Officer Peterson’s arrival and that he was intoxicated when he 
did so. See Pope v. State, 802 S.W.2d 418, 420 (Tex. App.—Austin 
1991, no pet.) (holding evidence showing intoxicated defendant found asleep in 
truck on remote road, with engine running, and lights on, furnished sufficient 
evidence of operating a vehicle while intoxicated); see also Garver v. State, 
No. 05-01-01032-CR, 2002 WL 1133019, at *3 (Tex. App.—Dallas May 31, 2002, 
pet. ref’d untimely filed) (not designated for publication) (holding only 
rational conclusion reachable from the evidence that defendant was found 
intoxicated, in an idling car, in a parking lot, late at night, was that 
defendant drove to the parking lot while intoxicated).
        Moreover, 
a rational trier of fact could have found that Yocom operated the truck in 
Officer Peterson’s presence. See Milam v. State, 976 S.W.2d 788, 789 
(Tex. App.—Houston [1st Dist.] 1998, no pet.). In this case, Yocom, in Officer 
Peterson’s presence, (1) had the engine running and the truck in drive; (2) 
activated his windshield wipers, turn signal and brake lights; and (3) put the 
truck in reverse, before putting it in park and rolling down the window. This 
evidence is legally sufficient to prove that Yocom took action to affect the 
functioning of his truck in a manner that would enable its use. See Denton, 
911 S.W.2d at 390; see also Milam, 976 S.W.2d at 789 (holding evidence 
legally sufficient to show operation where defendant was found asleep in car in 
parking lot, with engine running, car in gear, and foot on brake, and when 
awakened and told to put car in park, put car in reverse).[2]
        Yocom 
points to Ballard v. State, 757 S.W.2d 389, 391 (Tex. App.—Houston [1st 
Dist.] 1988, pet. ref'd) and Reddie v. State, 736 S.W.2d 923, 927 (Tex. 
App.—San Antonio 1987, pet. ref'd), where the evidence was found to be 
insufficient to show “operation,” contending they are similar to this case. 
However, we decline to follow these cases because of their limited pre-Geesa 
value.[3]  We, therefore, overrule Yocom’s 
first point.
B. Factual Sufficiency of Operation
        As 
to Yocom’s second point alleging factual insufficiency, after having 
reexamined all the evidence as required by the applicable standard of review we 
hold that the proof that Yocom was operating his truck while intoxicated is not 
so obviously weak as to undermine our confidence in the guilty verdict. See 
Johnson, 23 S.W.3d at 11. Yocom argues the evidence is insufficient because 
Officer Peterson admitted that he never saw the vehicle move and that the 
emergency brake was engaged. However, operation does not necessarily involve 
moving or driving. See Denton, 911 S.W.2d at 389. Yocom also argues that 
the evidence is insufficient because Peterson testified he assumed that 
Yocom’s foot was on the brake because the brake lights were turning on and 
off. However, Officer Peterson’s lack of knowledge regarding the position of 
Yocom’s feet does not show Yocom was not braking. See Garza, 846 S.W.2d 
at 938.
        Additionally, 
Yocom argues that Officer Peterson testified that he never saw Yocom engage in 
any act that “would show that he was trying to operate the vehicle” or 
“move the vehicle” or show “some exertion of . . . control over the 
vehicle.” However, that argument mischaracterizes Officer Peterson’s answer 
to the following question by defense counsel: “Did you — prior to coming 
into contact with him did you see Mr. Yocom commit any act that would show 
that he was trying to operate the vehicle, move the vehicle, show some exertion 
of . . . control over the vehicle?” Officer Peterson replied, “Prior to 
my contact, not to my knowledge, no.” Contrary to Yocom’s argument, this 
testimony is consistent with other evidence that shows, Officer Peterson saw 
Yocom attempt to operate the truck after coming into contact with him.
        Finally, 
Yocom argues that there is no evidence that he was intoxicated before the 
vehicle arrived in the parking lot, of how long he had been intoxicated, or of 
how long the vehicle had been in the lot. Once again, Yocom overlooks the 
evidence presented. The evidence shows Yocom’s truck could not have been there 
for more than forty-five minutes before Officer Peterson arrived, Yocom was 
alone and highly intoxicated, there were no alcoholic beverage containers in or 
around the truck, and Yocom admitted to drinking three beers and two hard liquor 
shots at a bar in Dallas. Viewing all the evidence, as we are required, we find 
it is factually sufficient to show that Yocom operated a motor vehicle. We 
overrule Yocom’s second point.
III. PRE-TRIAL HEARING ON MOTION TO SUPPRESS
        In 
his third point, Yocom complains that the trial court erred in refusing to grant 
his request for a pretrial motion to suppress outside the jury’s presence. The 
State alleges that Yocom waived this point because his complaint on appeal does 
not comport with the objection he made at trial.  We agree.
        To 
preserve a complaint for our review, a party must make a timely, specific 
objection and must obtain an adverse ruling from the trial court.  Tex. R. App. P. 33.1(a)(1); Mosley 
v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), cert. 
denied, 526 U.S. 1070 (1999). Additionally, if a complaint raised on appeal 
does not comport with the objection made at trial, it is waived. Bell v. 
State, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), cert. denied, 522 
U.S. 827 (1997); Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 
1990).
        Before 
voir dire, Yocom asked the trial court to hold a pretrial hearing on his motion 
to suppress evidence obtained by the State outside the presence of the jury 
based on a lack of probable cause and reasonable suspicion to stop. The trial 
court denied the request stating, “I’ll carry the motion with the trial.” 
Yocom then asserted he was entitled to litigate the issue outside the jury’s 
presence, citing (1) unnamed Supreme Court case law, (2) the Texas Court of 
Criminal Appeals case of Pierce v. State, 32 S.W.3d 247 (Tex. Crim. App. 
2000), and (3) Texas Rule of Evidence 105. The trial court again denied the 
request. During direct examination of Officer Peterson, Yocom “renew[ed] [his] 
objection to the Court’s failure to afford [him] a separate hearing outside 
the jury’s presence to determine the admissibility of any evidence obtained 
[by Officer Peterson] . . . on the night in question under Rule 104(a) of 
the Texas Rule of Evidence, as well as Pearce [sic].” [Emphasis 
supplied]. The trial court denied the request for a separate hearing and 
overruled Yocom’s objection stating, “When the State is finished presenting 
their evidence, I will allow you to put on any evidence that you so desire 
outside the presence of the jury.” After the State finished presenting its 
evidence, the trial court heard and overruled Yocom’s motion to suppress 
outside the jury’s presence.
        On 
appeal, Yocom argues that he was entitled to an admissibility hearing outside 
the jury’s presence under Texas Rule of Evidence 104(c). The specific 
grounds for Yocom's complaint on appeal are not apparent from the context of his 
objection at trial. While Yocom was not necessarily required to state which 
statute or law he was relying on in support of his objection, he was required to 
inform the trial court why he believed he was entitled to the ruling requested. See 
Nash v. State, 123 S.W.3d 534, 537 (Tex. App.—Fort Worth 2003, pet. 
filed). Yocom provided no basis at trial for why he was entitled to such relief. 
Therefore, he waived his point of error because his complaint on appeal does not 
comport with the objection he made at trial. See Dixon v. State, 2 S.W.3d 
263, 273 (Tex. Crim. App. 1998) (op. on reh’g). We overrule Yocom’s third 
point.
IV. MOTION TO SUPPRESS
        In 
his fourth point, Yocom complains that the trial court erred in denying his 
motion to suppress evidence obtained as a result of an alleged illegal 
detention. Specifically, Yocom contends that the State failed to show that the 
community care taking exception applied or that Officer Peterson had reasonable 
suspicion to detain him. The State argues the community care taking exception 
gave Officer Peterson ample justification for attempting to rouse Yocom, and by 
the time Yocom submitted to Officer Peterson’s demands, Officer Peterson had 
reasonable suspicion to detain him.
        We 
review a motion to suppress case through a bifurcated standard of review; we 
give almost total deference to the trial court's express or implied 
determination of historical facts and review de novo, the court's 
application of the law of search and seizure to those facts. State v. Ross, 
32 S.W.3d 853, 856 (Tex. Crim. App. 2000). When the trial court does not make 
explicit findings of historical facts, we view the evidence in the light most 
favorable to the trial court's ruling and assume that the trial court made 
implicit findings of fact supporting its ruling, if those findings are supported 
by the record. Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 
2000). In determining whether a trial court's decision is supported by the 
record, we generally consider only evidence adduced at the suppression hearing 
because the ruling was based on it rather than evidence that may have been 
introduced later. James v. State, 102 S.W.3d 162, 170 (Tex. App.—Fort 
Worth 2003, pet. ref’d).
        Prior 
to trial, Yocom filed a motion to suppress evidence seized as a result of his 
detention and arrest, asserting that Officer Peterson did not have the requisite 
probable cause, reasonable suspicion, lawful warrant, or other lawful authority 
to detain and arrest him. At the hearing on the motion, Yocom, the only wintess, 
testified that when Officer Peterson knocked on his window, he was not in 
distress, but just asleep. He also testified that his truck had come to rest in 
a well lit parking lot; that no other vehicles were around his truck; that he 
had a cell phone in his console that he could have used to call for assistance; 
that he did not consider himself a danger to himself or others; and that his 
emergency brake was engaged. Finally, he felt he was not free to leave when 
Officer Peterson banged on his window and told him to open it or he would have 
to break it. The trial court denied Yocom’s motion to suppress.
        For 
the purposes of Fourth Amendment analyses, police-civilian interactions are 
divided into three categories: (1) encounters, (2) detentions, and (3) arrests. See 
Florida v. Royer, 460 U.S. 491, 497-99, 103 S.Ct. 1319, 1323-25 (1983). In 
an encounter, a police officer may approach a citizen without probable cause or 
reasonable suspicion to ask questions or even to request a search because the 
citizen approached is under no compulsion to remain. See id. at 497-98, 
103 S.Ct.1323-24; Johnson v. State, 912 S.W.2d 227, 235 (Tex. Crim. App. 
1995). Therefore, in this case, Officer Peterson was as free as any other 
citizen to approach Yocom’s driver’s side window. Florida v. Bostick, 
501 U.S. 429, 434, 111 S.Ct. 2382, 2386 (1991); Hunter v. State, 955 
S.W.2d 102, 104 (Tex. Crim. App. 1997).
        An 
encounter becomes a investigative detention if the police officer’s words or 
conduct would communicate to a reasonable person that he or she is not free to 
deny the officer’s requests or terminate the encounter. See State v. 
Velasquez, 994 S.W.2d 676, 680 (Tex. Crim. App. 1999). An investigative 
detention is permitted when supported by reasonable suspicion. Terry v. Ohio, 
392 U.S. 1, 30, 88 S.Ct. 1868, 1884-85 (1968); Brother v. State, 85 
S.W.3d 377, 382 (Tex. App.–Fort Worth 2002, no pet.). Reasonable suspicion 
exists if the officer has specific articulable facts that, when combined with 
rational inferences from those facts, would lead him to reasonably suspect that 
a particular person has engaged in, or is or soon will be engaging in, illegal 
conduct. Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). The 
reasonableness of a given detention will turn on the totality of the 
circumstances in that particular case. Woods v. State, 956 S.W.2d 33, 38 
(Tex. Crim. App. 1997); State v. Sailo, 910 S.W.2d 184, 188 (Tex. 
App.—Fort Worth 1995, pet. ref’d).
          
Even in the absence of any suspicion of criminal activity, the community 
caretaking exception allows police officers, as part of their duty to “serve 
and protect,” to stop or temporarily detain an individual whom a reasonable 
person would believe is in need of help given the totality of the circumstances. 
See Wright v. State, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999). However, 
in order to invoke his community caretaking function, the officer’s primary 
motive must be concern for the individual’s well-being. Corbin v. State, 
85 S.W.3d 272, 277 (Tex. Crim. App. 2002). Here, the record reflects that 
Officer Peterson was not sure if Yocom needed help, but was concerned that Yocom 
may have been a victim of an robbery at the ATM. Additionally, Officer Peterson 
testified that he did not know from looking in Yocom’s truck whether Yocom was 
asleep, sick, or passed out. We conclude that the trial court, as the exclusive 
judge of credibility and finder of fact, could have concluded that Officer 
Peterson was initially primarily motivated by community caretaking concerns. See 
id. (citing Ross, 32 S.W.3d at 855).
        Next, 
we must determine, based on four nonexclusive factors whether Officer Peterson 
acted reasonably in detaining Yocom to determine if he needed help: (1) the 
nature and level of the distress exhibited by the individual; (2) the location 
of the individual; (3) whether or not the individual was alone and/or had access 
to assistance independent of that offered by the officer; and (4) to what extent 
the individual, if not assisted, presented a danger to himself or others. Wright, 
7 S.W.3d at 151-52. The first factor is entitled the greatest weight. Corbin, 
85 S.W.3d at 277.
        Here, 
the first and second factors weigh in favor of the detention. Being asleep or 
unconscious, slumped over the wheel of a truck with its motor running, in the 
early morning hours, in a closed bank parking lot, near an ATM that the officer 
knew had previously been the site of at least two robberies, demonstrates an 
extremely high level of distress. See Wayne R. Lafave, Search and Seizure § 7.4(f) (3d ed. 1996) (“If 
the police find a person unconscious or disoriented and incoherent in a vehicle 
. . . , it is reasonable for them to enter the vehicle for the purpose of giving 
aid to the person in distress and of finding information bearing upon the cause 
of his condition.”).
        The 
third factor also weighs in favor of the detention.  While Yocom presented 
evidence that he had a cell phone inside his console that he could have 
used to call for help, there was no evidence Officer Peterson was aware of its 
presence.  Moreover, the evidence did show Yocom was alseep or unconscious, 
alone in his truck, stopped at a closed business, late at night, with no other 
cars around. At worst, this factor is neutral in determining if the detention 
was reasonable.
        Finally, 
the fourth factor also weighs in favor of the detention. While Yocom testified 
that he was not a danger to himself or anyone else, the evidence shows that, if 
Officer Peterson simply left Yocom alone, Yocom could have died from carbon 
monoxide poisoning from the running engine or from diabetic shock.  
Applying the Wright factors, we conclude that Officer Peterson’s 
exercise of his community caretaking function was reasonable.
        Yocom 
argues that once he awoke, Officer Peterson “was able to see that the 
situation presented nothing more than an individual who had good sense to pull 
over and take a nap in a well-lit parking lot.” This statement could not be 
further from the truth. In the three plus minutes it took Officer Peterson to 
rouse Yocom and make contact with him in order to determine if he was in need of 
assistance,[4]  Officer Peterson obtained this 
additional evidence: Yocom had a difficult time waking; he appeared to be in a 
daze; his eyes appeared to be glassy, watery, and bloodshot; and he was not able 
to follow the officer’s instructions, which prompted Officer Peterson to 
conclude to his partner, “He’s drunk though.”  These facts are 
sufficient to justify Officer Peterson’s further detention of Yocom based on 
reasonable suspicion.  See Garcia, 43 S.W.3d at 530.  
Therefore, we overrule Yocom’s fourth point.
V. ADMISSION OF BLOOD TEST RESULTS
        In 
point five, Yocom complains the trial court erred in admitting his medical 
records containing evidence of his blood-alcohol test results because the State 
failed to show his consent to the blood draw was voluntarily obtained.  In 
response, State contends that Yocom cannot claim that his consent was 
involuntary because he failed to present evidence to the trial court that the 
blood was drawn as a result of “state action” that violated his 
constitutional rights.
        At 
trial and in his third letter brief, Yocom argues that by obtaining records of 
the blood draw on the “strength of the subpoena” and then introducing it at 
trial, the State acted to implicate his constitutional rights.  In support 
of this proposition, Yocom cites Thurman v. State, where the court of 
appeals held, “[a] grand jury subpoena plainly constitutes state action, and 
may amount to an illegal seizure.” Thurman v. State, 861 S.W.2d 96, 98 
(Tex. App.—Houston [1st Dist.] 1993, no pet.).
        Thurman 
does not support Yocom’s argument, nor do we find it persuasive. Thurman 
deals with a grand jury subpoena, not a subpoena duces tecum. Additionally, as 
the only support for its holding, the Thurman court cites Boyle v. 
State, where the Texas Court of Criminal Appeals determined that arresting a 
defendant pursuant to a grand jury material witness attachment was an attempt to 
circumvent his constitutional rights and illegal.  Boyle v. State, 
820 S.W.2d 122, 129-30 (Tex. Crim. App. 1989), overruled on other grounds by Gordon 
v. State, 801 S.W.2d 899, 911 n.13 (Tex. Crim. App. 1990). Here, no similar 
“state action” occurred. Instead, the record shows that (1) Yocom 
voluntarily consented to medical treatment by the hospital; (2) he was aware 
that the hospital could be required by law to turn over such records; (3) he 
allowed hospital staff to take a blood draw for therapeutic medical purposes; 
and (4) the State obtained the records through a subpoena duces tecum.  
Yocom has not explained how the State’s use of a subpoena duces tecum to 
obtain his medical records constituted an unreasonable search and seizure.  
We overrule Yocom’s fifth point.
        In 
points six through eight, Yocom complains his medical records were obtained in 
violation of the Fourth Amendment, article I, section 9 of the Texas 
Constitution, and article 38.23 of the Texas Code of Criminal Procedure.  
As the basis for these points, Yocom argues that the Health Insurance 
Portability and Accountability Act (HIPPA) overruled State v. Hardy.[5]  The initial date for covered entities, like the 
hospital in this case, to comply with the privacy standards of HIPPA was April 
14, 2002.  See 45 C.F.R. § 164.534 (2002); See Tapp v. State, 
108 S.W.3d 459, 463 (Tex. App.—Houston [14th Dist.] 2003, pet. 
ref’d). Therefore, any noncompliance prior to that time cannot constitute a 
violation of the regulation. See Tapp, 108 S.W.3d at 463.  Here, 
compliance with HIPPA was not required at the time the evidence was 
obtained.  Therefore, HIPPA in its pre-enforcement stage did not overrule Hardy.  
Id.  We overrule Yocom’s six, seventh, and eight points.
VI. JURY CHARGE
        In 
points nine and ten, Yocom complains that the trial court erred in failing to 
instruct the jury under article 38.23[6] regarding the 
voluntariness of his consent to give a blood sample and whether Officer Peterson 
had reasonable suspicion pursuant to detain him.  In points eleven and 
twelve, Yocom complains that the trial court erred in denying his request that 
the court define the term “operating” in the jury charge and instruct the 
jurors on the “reasonable hypothesis of guilt” analytical construct.
        Appellate 
review of error in a jury charge involves a two-step process.  Abdnor v. 
State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Initially, we must 
determine whether error occurred. If so, we must then evaluate whether 
sufficient harm resulted from the error to require reversal.  Id. at 
731-32. Error in the charge, if timely objected to in the trial court, requires 
reversal if the error was “calculated to injure [the] rights of the 
defendant,” which means no more than that there must be some harm to 
the accused from the error.  Tex. Code Crim. Proc. Ann. art. 36.19 
(Vernon 1981); see also Abdnor, 871 S.W.2d at 731-32; Almanza v. State, 
686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g).
A. Article 38.23 Instructions
        Under 
article 38.23 of the Texas Code of Criminal Procedure, the trial court is 
required to exclude any evidence that it finds, as a matter of law, was obtained 
in violation of the Constitution or the laws of the United States or of the 
State of Texas. art. 38.23(a); Franks v. State, 90 S.W.3d 771, 806 (Tex. 
App.—Fort Worth 2002, pet. ref’d.).  However, where there is only a 
fact issue regarding the manner in which the evidence was obtained, article 
38.23 requires the court to submit the question to the jury. Franks, 90 
S.W.3d at 806.  In such event, the trial court must include an instruction 
to the jury to disregard the evidence, if the jury believes, or has a reasonable 
doubt, that the evidence was obtained in violation of the law. art. 
38.23(a).  The only question is whether, under the facts of a particular 
case, the defendant raised the issue by the evidence, thus requiring the jury 
instruction.  Franks, 90 S.W.3d at 806.
1. Instruction on Voluntariness of Consent
        Yocom 
argues that Nurse Langley’s testimony was inherently contradictory and created 
a factual dispute about whether the blood sample was taken voluntarily.  
However, Yocom cites no evidence in the record to suggest that he was coerced or 
persuaded to give his consent to a blood draw by the hospital. Instead, the 
evidence shows that Yocom signed (1) the hospital’s “Universal Consent for 
Treatment,” in which he “consent[ed] to and authorize[d] testing, treatment, 
and/or hospital care as ordered by [his] doctor and [the doctor’s staff]” 
and (2) the hospital’s “Admission Acknowledgments” that informed him that 
his medical records might be released to “any other person or entity as 
required or allowed by state and federal law.” Langley testified she was not 
working for the police, and that Yocom was not under arrest at the hospital, was 
conscious when he signed the forms, never refused medical treatment, and very 
willingly and cooperatively handed his arm out for her to draw his blood.
        In 
an attempt to show that Langley’s testimony was “inherently 
contradictory,” Yocom points to her testimony that (1) she never told Yocom 
that his blood sample would be turned over to the police and (2) she was not 
aware that he consented to his blood sample being turned over to police.  
The State argues that Yocom fails to raise a sufficient factual dispute for the 
jury to resolve.  We agree.  There is complete agreement on what 
occurred and how the blood specimen was obtained, but a legal dispute over the 
application of the law to the undisputed facts.  Accordingly, article 
38.23(a) was not implicated. See Franks, 90 S.W.3d at 806.  We 
overrule Yocom’s ninth point.
2. Instruction on Reasonable Suspicion to Detain
        Yocom 
also argues that Officer Peterson’s testimony was inherently contradictory and 
created a factual dispute about whether reasonable suspicion existed to detain 
him.  However, Yocom cites no evidence in the record to suggest that 
Officer Peterson did not have reasonable suspicion at the time he detained 
Yocom.  Instead, Yocom points to evidence regarding why Officer Peterson approached 
Yocom’s stopped truck.  That evidence shows Officer Peterson testified 
that when he approached Yocom’s vehicle, he had not seen Yocom commit any 
traffic violation, had no warrants for his arrest, had no reasonable suspicion, 
and did not know what was “going on.”  He later added that prior to 
contacting Yocom, he was concerned that Yocom might have been a victim of a 
robbery because there had been at least two assaults in that bank parking lot.
        Additionally, 
Yocom concludes by citing Reynolds v. State, for the proposition that an 
article 38.23 charge is required where evidence raises a fact question as to the 
legality of a traffic stop. Reynolds v. State, 848 S.W.2d 148, 149 (Tex. 
Crim. App. 1993).  However, the alleged factual dispute Yocom points to 
does not deal with a traffic stops, but an officer approaching a stationary 
vehicle.  As the State correctly points out, a police officer does not need 
reasonable suspicion to approach such a vehicle.  See Royer, 460 
U.S. at 497-98, 103 S.Ct. at 1323-24 (1983) (holding a police officer may 
approach a citizen without probable cause or reasonable suspicion to ask 
questions or even to request a search); Johnson, 912 S.W.2d at 235 (Tex. 
Crim. App. 1995) (holding same). Therefore, Yocom failed to identify a factual 
dispute regarding whether Officer Peterson had reasonable suspicion to detain 
him that would require an article 38.23 instruction. We overrule Yocom’s tenth 
point.
C. Instruction Defining “Operating”
        As 
a general rule, terms not statutorily defined need not be defined in the jury 
charge, but instead are to be given their common, ordinary, or usual meaning. See 
Martinez v. State, 924 S.W.2d 693, 698 (Tex. Crim. App. 1996).  Jurors 
are presumed to know and apply such common and ordinary meanings. See Cuevas 
v. State, 742 S.W.2d 331, 346 (Tex. Crim. App.1987), cert. denied, 
485 U.S. 1015 (1988), overruled on other grounds by Woolridge v. State, 
827 S.W.2d 900, 906 (Tex. Crim. App. 1992).  Only if the word or term does 
not have a common meaning that the jurors can be fairly presumed to know and 
apply, must a definition be supplied. Resendiz v. State, 112 S.W.3d 541, 
550 (Tex. Crim. App. 2003).  Additionally, terms that have a technical 
legal meaning may need to be defined, particularly “when there is a risk that 
the jurors may arbitrarily apply their own personal definitions of the terms or 
where a definition of the term is required to assure a fair understanding of the 
evidence.”  Middleton v. State, 125 S.W.3d 450, 454 (Tex. Crim. 
App. 2003). However, simply because a term has acquired a technical legal 
meaning does not necessarily mean that it has to be defined. Id. (citing Andrews 
v. State, 652 S.W.2d 370, 375-76 (Tex. Crim. App. 1983)). “A trial court 
has broad discretion in submitting proper definitions and explanatory phrases to 
the jury.” See Macias v. State, 959 S.W.2d 332, 336 (Tex. 
App.—Houston [14th Dist.] 1997, pet. ref'd).
        Here, 
Yocom argues that although “operating” is not statutorily defined, it should 
have been defined because it has a technical legal meaning. The State counters 
that “operating” is not a legal technical term that an average juror could 
not be expected to understand without guidance from the trial court. We agree 
with the State. The term “operating” has not “acquired a peculiar . . . 
meaning in the law.” Medford v. State, 13 S.W.3d 769, 772 (Tex. 
Crim. App. 2000). Instead, courts have consistently applied a plain meaning to 
the word, allowing jurors to freely construe the term to have any meaning within 
its normal usage. See Denton, 911 S.W.2d at 390; Barton, 882 
S.W.2d at 459. Even Yocom’s counsel recognized this when he told the trial 
court at one point that, “[b]ecause the term operate is not defined in the 
Penal Code case law says we have to interpret it in its normal usage.” 
Accordingly, we overrule Yocom’s eleventh point.
D. Instruction on “Reasonable Hypothesis of Guilt”
        In 
Geesa v. State, the Texas Court of Criminal Appeals discarded the 
reasonable hypothesis of guilt analytical construct altogether, stating that the 
construct was inappropriate both as a jury instruction and a standard of review. 
820 S.W.2d 154, 161-63 (Tex. Crim App. 1991). However, the court also held that 
abrogation of the reasonable hypothesis of guilt analytical construct 
necessitated the requirement of a full definitional instruction to the jury on 
reasonable doubt. Id. at 161. Nine years later, in Paulson v. State, 
the court overruled that portion of Geesa that required trial courts to 
instruct juries on the definition of “beyond a reasonable doubt.” 28 S.W.3d 
570, 573 (Tex. Crim. App. 2000). Yocom invites this court to interpret Paulson 
as resurrecting the pre-Geesa standard which required an instruction on 
the “reasonable hypothesis of guilt” analytical construct. We decline this 
invitation.
        In 
Paulson, the court specifically limited its decision to that portion of Geesa 
which required trial courts to instruct juries on the definition of “beyond a 
reasonable doubt.” Id. To find that a repudiation of the “beyond a 
reasonable doubt” instruction necessarily means a return to jury instructions 
on circumstantial evidence would be to follow the same logic criticized by the 
court in Paulson. Id. at 572. We conclude that a jury instruction on the 
“reasonable hypothesis of guilt” contruct is improper. Therefore, we hold 
that the trial court committed no error in failing to give such an instruction 
in the instant case. Appellant's third point of error is overruled.
VII. CLOSING ARGUMENTS
        In 
his fourteenth point, Yocom complains the trial court erred in overruling his 
objection that the prosecutor argued matters outside the record during closing 
arguments. In his thirteen point, Yocom complains the trial court erred in 
denying his request for a mistrial after the prosecutor argued contrary to the 
court’s charge during closing arguments.
A. Argument Outside the Record
        To 
be permissible, the State’s jury argument must fall within one of the 
following four general areas: (1) summation of the evidence; (2) reasonable 
deduction from the evidence; (3) answer to argument of opposing counsel; or (4) 
pleas for law enforcement. Felder v. State, 848 S.W.2d 85, 94-95 (Tex. 
Crim. App. 1992), cert. denied, 510 U.S. 829 (1993); Alejandro v. 
State, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). If a jury argument 
exceeds the bounds of proper argument, the trial court’s erroneous overruling 
of a defendant’s objection is not reversible error unless it affected the 
appellant’s substantial rights. Tex. R. 
App. P. 44.2(b); Martinez v. State, 17 S.W.3d 677, 692-93 (Tex. 
Crim. App. 2000); Mosley, 983 S.W.2 at 259. A trial court’s denial of 
an objection to argument outside the record is nonconstitutional error and is 
analyzed under Tex. R. App. P. 
44.2(b). Martinez, 17 S.W.3d at 692.
        Here, 
after discussing how Yocom’s high blood-alcohol level showed he had lost the 
normal use of his mental and physical faculties, the prosecutor stated, “That 
should be terrifying. He made it somehow to Euless. Are we lucky nobody died? 
Yes, we are.” At that point, Yocom objected that the prosecutor’s argument 
was not a reasonable deduction from the evidence and that it was outside the 
record. The trial court overruled the objection. On appeal, Yocom complains that 
this prosecutor’s comment, was outside the record, was not a reasonable 
deduction from the evidence, and injected new harmful facts into the trial. We 
disagree.
        The 
facts show (1) Yocom admitted that he had been drinking at a bar in Dallas; (2) 
Officer Peterson stated to Yocom “you got pretty far;” (3) Yocom was 
extremely intoxicated; and (4) Yocom admitted that he had pulled over because he 
was not feeling well and was driving “bad.” Based on these facts, the 
prosecutor’s jury argument was a reasonable deduction from the evidence. See 
Rocha v. State, 16 S.W.3d 1, 22-23 (Tex. Crim. App. 2000) (holding argument 
that defendant would join a prison gang was properly deduced from fact that 
defendant “consistently committed crimes in groups”); Bobbit v. State, 
No. 2-01-506-CR, 2003 WL 21197606, *1 (Tex. App.—Fort Worth May 22, 2003, no 
pet.) (not designated for publication) (holding argument that drunk drivers like 
defendant injure or kill people was a reasonable deduction from the evidence). 
Accordingly, we overrule Yocom’s fourteenth point.
B. Argument Contrary to Charge
        When 
the trial court sustains an objection to an improper jury argument and instructs 
the jury to disregard but denies a defendant’s motion for a mistrial, the 
issue is whether the trial court erred in denying the mistrial. Faulkner v. 
State, 940 S.W.2d 308, 312 (Tex. App.—Fort Worth 1997, pet. ref’d) (en 
banc op. on reh’g). Its resolution depends on whether the court’s 
instruction to disregard cured the prejudicial effect, if any, of the improper 
argument. Id. Generally, an instruction to disregard impermissible 
argument cures any prejudicial effect. Wesbrook v. State, 29 S.W.3d 103, 
115 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 944 (2001); Dinkins 
v. State, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995), cert. denied, 
516 U.S. 832 (1995).
        In 
assessing the curative effect of the court’s instruction to disregard, the 
correct inquiry is whether, in light of the record as a whole, the argument was 
extreme, manifestly improper, injected new and harmful facts into the case, or 
violated a mandatory statutory provision and was thus so inflammatory that the 
instruction to disregard was ineffective. Wesbrook, 29 S.W.3d at 
115-16.  If the instruction cured any prejudicial effect caused by the 
improper argument, a reviewing court should find that the trial court did not 
err. Dinkins, 894 S.W.2d at 357; Faulkner, 940 S.W.2d at 312. Only 
if the reviewing court determines the instruction was ineffective does the court 
go on to determine whether, in light of the record as a whole, the argument had 
a substantial and injurious effect or influence on the jury’s verdict. Tex. R. App. P. 44.2(b); King v. State, 953 
S.W.2d 266, 271 (Tex. Crim. App. 1997).
        The 
information in this case alleges that Yocom lost the normal use of his mental 
and physical faculties by reason of the introduction of alcohol into his body, 
but does not allege that he was intoxicated as a result of having a 
blood-alcohol level of 0.08 or greater.  Therefore, the court’s charge 
reflected only what the information alleges, making no mention of this latter 
type of intoxication.  During the prosecutor’s closing arguments at the 
guilt-innocence phase of the trial, the following exchange took place:
 
[PROSECUTOR]: 
There’s at least three people the State of Texas does not want operating motor 
vehicles on their roadways. That’s a person who does not have the normal use 
of their mental faculties, a person that does not have the normal use of their 
physical faculties and a person who has an alcohol concentration level of 0.08 
or greater.
  
        At 
that point, Yocom objected that the prosecutor’s argument was contrary to the 
court’s charge. The trial court sustained the objection, instructed the jury 
to disregard the objectionable statement, and denied Yocom’s request for a 
mistrial.  Notwithstanding the curative instruction, appellant asserts harm 
on the basis that the error “took place immediately before jury 
deliberations” and “not in the middle of trial where any harmful effect may 
have been attenuated.”  Appellant's conclusory assertion is not 
compelling and does not accurately reflect the record.[7]   
Mayo v. State, 17 S.W.3d 291, 300 (Tex. App.—Fort Worth 2000, pet. 
ref’d). We agree with the State that because appellant fails to present any 
argument or relevant authority to negate the presumption that the instruction to 
disregard cured any harm, he has waived error, if any. Id.; Bridgewater 
v. State, 905 S.W.2d 349, 354 n.5 (Tex. App.—Fort Worth 1995, no 
pet.).  We overrule Yocom’s thirteenth point.[8]
VIII. CONCLUSION
        Having 
overruled all of Yocom’s points, we affirm the trial court’s judgment.
 
 
                                                                  BOB 
MCCOY
                                                                  JUSTICE
 
 
PANEL 
A:   CAYCE, C.J.; GARDNER and MCCOY, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
April 8, 2004

 
NOTES
1.  
Yocom’s hospital records show that he admitted to consuming three beers and 
two hard liquor shots.
2.  
Yocom cites Garza v. State, 846 S.W.2d 936, 938-39 (Tex. App.—Houston 
[1st Dist. 1993, pet. ref’d.) arguing that because he activated his windshield 
wipers, turn signals, and break pedal and put his truck in reverse “in 
response” to Officer Peterson’s instructions to put his truck in park, turn 
it off, and open the door or window, those activities cannot be offered to show 
Yocom operated the vehicle. However, because Yocom did not operate his car as 
directed by the police, as was the case in Garza, this case is 
distinguishable from the facts in Garza.
3.  
In these cases the reviewing courts were required to apply the reasonable 
hypothesis of guilt analytical construct. Geesa v. State, 820 S.W.2d 154, 
158 (Tex. Crim. App. 1991), overruled in part on other grounds, Paulson 
v. State, 28 S.W.3d 570 (Tex. Crim. App. 2000). In other words, as to a 
conviction based on circumstantial evidence, the State had to exclude all 
reasonable hypotheses, other than the defendant's guilt, in order for the 
evidence to be legally sufficient on appeal.  Geesa, 820 S.W.2d at 
161.  The reasonable hypothesis analytical construct was overturned in Geesa, 
and no longer binds this court.  Id.  Thus Yocom's cited pre-Geesa 
authorities are “not controlling and are of limited value.”  Barton 
v. State, 882 S.W.2d 456, 458-59 (Tex. App.—Dallas 1994, no pet.); Wilson 
v. State, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999).  Additionally, in 
section VI(D), we decline Yocom’s invitation to interpret Paulson as 
resurrecting the pre-Geesa standard.  See Sonnier v. State, 
913 S.W.2d 511, 516 (Tex. Crim. App. 1995) (declining to resurrect the 
doctrine).
4.  
The trial court had the discretion to conclude that Yocom was not seized until 
he began to comply with the officer’s directions.  See California v. 
Hodari D., 499 U.S. 621, 626-29, 111 S.Ct. 1547, 1550-52 (1991) (no seizure 
for Fourth Amendment purposes when defendant did not acquiesce in show of police 
authority); see also Johnson v. State, 912 S.W.2d at 234-35.
5.  
See State v. Hardy, 963 S.W.2d 516, 527 (Tex. Crim. App. 1997) (holding 
appellant does not have a reasonable expectation of privacy in blood-alcohol 
test results taken by hospital personnel solely for medical purposes); See 
also Ramos v. State, 124 S.W.3d 326, 336-38 (Tex. App.—Fort Worth 2003, no 
pet. h.). (following Hardy and holding there is no constitutional or 
statutory expectation of privacy in such medical records).
6.  
Article 38.23 states in relevant part:
No 
evidence obtained by an officer or other person in violation of any provisions 
of the Constitution or laws of the State of Texas, or of the Constitution or 
laws of the United States of America, shall be admitted in evidence against the 
accused on the trial of any criminal case. In any case where the legal 
evidence raises an issue hereunder, the jury shall be instructed that if it 
believes, or has a reasonable doubt, that the evidence was obtained in violation 
of the provisions of this Article, then and in such event, the jury shall 
disregard any such evidence so obtained. [Emphasis supplied.] Tex. Code Crim. Proc. Ann. art. 38.23 
(Vernon 2004).
7.  
The argument was not made “immediately before the jury deliberation” as 
Yocom alleges, but made near the end of the prosecution’s closing argument, 
which was followed by Yocom’s closing arguments, and the State’s rebuttal.
8.  
In this issue, Yocom also argues that the prosecutor’s statement was contrary 
to his pretrial motion in limine asking that the State not “ask [the] jury at 
the end of the evidence to convict [Yocom] on the theory that he had a blood 
alcohol content in excess of .08" during the State’s opening statements. 
However, Yocom makes no argument and cites no authority for this 
proposition.  Tex. R. App. P. 
38.1(h).  Moreover, violation of a ruling on a motion in limine is not, 
alone, a basis for appellate relief. Geuder v. State, 115 S.W.3d 11, 15 
n.11 (Tex. Crim. App. 2003).  Accordingly, nothing was preserved for our 
review. See id.