Jon E. MAYO, Appellant,

v.

The STATE of Texas, State.

Nos. 2–96–394–CR, 2–96–395–CR.

Court of Appeals of Texas, Fort Worth.

April 6, 2000.

Rehearing Overruled May 11, 2000.

Don Hase, Arlington, for appellant.

Tim Curry, Criminal Dist. Atty., Charles M. Mallin, David M. Curl, Jay Lapham, Christy Jack, Asst. Criminal Dist. Attys., Fort Worth, for appellee.

Panel B: LIVINGSTON, RICHARDS, and HOLMAN, JJ.

## OPINION ON REMAND

DIXON W. HOLMAN, Justice.

This case is before us on remand for consideration of Jon E. Mayo's remaining points on appeal.[1]

### BACKGROUND

Appellant was charged with sexually assaulting his two former step-daughters, E.W. and N.W. After a jury trial, the jury found appellant guilty of aggravated sexual assault and indecency with a child by contact in E. W.'s case and sentenced him to life imprisonment and twenty years' imprisonment, respectively. The jury also found appellant guilty of indecency with a child in N. W.'s case and sentenced him to twenty years' imprisonment.

---

1. We previously sustained the third point in appellant's brief and reversed and remanded the cause for a new trial. *See Mayo v. State,* 971 S.W.2d 464 (Tex.App.—Fort Worth 1998). Upon the State's petition for discretionary review, the court of criminal appeals reversed this court's judgment and remanded the cause to us to address appellant's remaining points. *See Mayo v. State,* 4 S.W.3d 9, 12 (Tex.Crim. App.1999).

In his remaining points, appellant generally complains of jury misconduct, ineffective assistance of counsel, jury charge error, evidentiary error, and improper jury argument. We affirm.

## JURY MISCONDUCT

In point one, appellant contends the trial court erred by denying his motion for new trial on the basis that the jury, after retiring to deliberate, received other evidence by viewing incorrect drafts of the court's charges. Appellant attributes this occurrence to jury misconduct. See TEX.R. APP. P. 21.3(f), (g).

Approximately two hours after the jury resumed deliberations the day after the close of the guilt/innocence phase of trial, it was discovered by the bailiff that two draft copies of the charges were left on the table in the jury room. The draft charge in E. W.'s case contained several interlineations made by the trial judge. The draft charge in N. W.'s case contained an instruction on the statute of limitations for the offenses of aggravated sexual assault and indecency with a child. Each draft had the word "Copy" written in the bottom margin of the first page.

The trial court questioned the jury about whether they had read the copies or referred to them in any way, and they responded, collectively, that they had not read them or referred to them. The following exchange then occurred—

UNIDENTIFIED JUROR: I don't believe we did, no, sir. They were laying on the table. We noticed—I picked it up, and I did notice that it said copy, because I asked Rickie, I believe, 'Did that say copy?' He said, "Yeah." And that was—

THE COURT: But you-all did not refer to them; is that correct?

(THE JURY ANSWERED "NO" COLLECTIVELY)

THE COURT: So it was the same as if you had not even had them in the room then; is that correct?

UNIDENTIFIED JUROR: Correct.

Thereafter, the trial judge polled each juror individually, and each one agreed that they had not looked at the draft charges.

At the motion for new trial hearing, appellant presented the testimony of juror Cynthia Zavaleta. Zavaleta testified that one of the male jurors picked up one of the copies "and started looking through it, each page, and then he noticed that there was some writing on the sides, and he put it back." She testified that the unidentified juror said "it looked different," and showed it to the foreman. Zavaleta stated that the occurrence had no effect on her decision or on the jury's deliberations.

The State called the foreman of the jury Katherine Harrison, who testified similarly. She recalled that the papers were on the table in the jury room when the jury arrived that morning to resume deliberations. She further recalled one male juror looking at the papers and commenting that "they had said 'copy' on them." She explained that she "pulled them over in front of [her] and noted that it said 'copy,' and that was it." To her knowledge, the unidentified juror did not read or open the charges. The foreman believed the documents were copies of the same charges given to the jury and was not aware of any differences in the charges. She testified that the occurrence had no effect on deliberations and was not discussed. The trial court subsequently denied appellant's motion for new trial.

When jury misconduct is raised in a motion for new trial, whether misconduct has occurred is a decision for the trial court, and we will not disturb that ruling absent a clear abuse of discretion. See Short v. State, 995 S.W.2d 948, 954 (Tex. App.—Fort Worth, pet. ref'd); Hernandez v. State, 938 S.W.2d 503, 507 (Tex.App.—Waco 1997, pet. ref'd). A movant for a new trial based on jury misconduct must show that (1) misconduct occurred, and (2) the misconduct resulted in harm to the movant. See Garza v. State, 630 S.W.2d

272, 274 (Tex.Crim.App. [Panel Op.] 1981). The trial court is the sole judge of the credibility of the testifying jurors. *Lewis v. State,* 911 S.W.2d 1, 7 (Tex.Crim.App. 1995). In the absence of pertinent findings, we must view the evidence adduced at the hearing in the light most favorable to the trial court's ruling. *See Quinn v. State,* 958 S.W.2d 395, 402 (Tex.Crim.App. 1997).

■ After reviewing the testimony of jurors Zavaleta and Harrison under the appropriate standard and because the trial court could have determined, after examining the credibility and demeanor of the testifying jurors, that no misconduct in fact occurred and that the incident had no injurious effect or influence on deliberations in this case, we cannot conclude appellant has satisfied his burden to show the jury received other evidence during deliberations that was detrimental to him. *See* Tex.R.App. P. 21.3(f), (g); *Bath v. State,* 951 S.W.2d 11, 17 (Tex.App.—Corpus Christi 1997, pet. ref'd), *cert. denied,* 525 U.S. 829, 119 S.Ct. 80, 142 L.Ed.2d 62 (1998). Accordingly, a new trial was not warranted and the trial court did not abuse its discretion by denying the motion on this basis. Point one is overruled.

In point two, appellant raises one of six instances of alleged ineffective assistance of counsel. In this instance, he contends trial counsel was ineffective by failing to file a timely motion for new trial alleging that the jury viewed the incorrect drafts of the court's charges. *See* Tex.R.App. P. 21.4(b).

■ To prevail on an ineffective assistance claim in any particular instance, appellant must satisfy the *Strickland* requirements. First, he must show that his counsel's performance was deficient; second, he must show the deficient performance prejudiced the defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

■ The first component is met by showing appellant's trial counsel made errors so significant he was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See id.* When a convicted defendant contends his trial counsel was ineffective, the defendant must show the attorney's representation fell below an objective standard of reasonableness. *See id.* at 687–88, 104 S.Ct. at 2064. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See id.* at 688–89, 104 S.Ct. at 2065. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066.

■ The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable. *See id.* at 687, 104 S.Ct. at 2064. A defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See id.* at 694, 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *See id.*

■ Appellant's argument under this point is superfluous. In appellant's timely filed and verified original motion for new trial, counsel specifically raised the issue that, based on information received, the jury had been exposed to inaccurate copies of the charges. In an untimely filed amended motion for new trial, counsel merely attempted to supplement the original motion with Zavaleta's affidavit in support of the misconduct complaint. *See* Tex.R.App. P. 21.4(b). The rules of appellate procedure authorize a trial court to hear evidence on a motion for new trial by affidavit or otherwise. *See* Tex.R.App. P. 21.7. We agree with the State that the issue of whether the original motion was sufficient to warrant a hearing on the issue

became moot as soon as the trial court granted a hearing on the motion. Consequently, the fact that the trial court could not consider the amended motion and supporting affidavit was inconsequential. Counsel timely raised the issue in his original motion and the trial court granted a hearing on the motion and heard Zavaleta's testimony on the issue at the hearing. We perceive no ineffective assistance in this instance. Point two is overruled.

### DISQUALIFIED JUROR

■ In point three, appellant contends the trial court erred by denying his motion for new trial on the basis of the post-trial discovery that juror Zavaleta did not live in the county where he was tried. It was appellant's contention that this fact absolutely disqualified Zavaleta from jury service. The court of criminal appeals has ruled against appellant on this issue and determined that the requirement that a juror be a county citizen is not an absolute requirement that cannot be waived. *See Mayo,* 4 S.W.3d at 12. Thus, appellant's failure to challenge Zavaleta for cause on the basis of her out-of-county status waived error. *See id.*

■ In point four, appellant contends he received ineffective assistance because trial counsel did not timely file a motion for new trial alleging that juror Zavaleta was not a resident of Tarrant County. In light of the court of criminal appeals's disposition of appellant's point three, this argument fails. Clearly, even had counsel filed a timely motion for new trial raising Zavaleta's out-of-county status, the complaint would have been considered untimely because the complaint must have been raised during voir dire. *See Jackson v. State,* 548 S.W.2d 685, 697 (Tex.Crim.App. 1977); *Matthias v. State,* 695 S.W.2d 736, 740 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd). Moreover, the record indicates counsel was unaware of Zavaleta's status until after the time for filing a motion or

amended motion for new trial had expired. Accordingly, appellant has failed to show counsel's performance was deficient in this instance. Point four is overruled.

### JURY CHARGE/ ELECTION

In points five and six, appellant contends counsel rendered ineffective assistance by failing to object to the allegedly erroneous jury charge in E. W.'s case. In the indictment, appellant was charged in count one with two separate acts of aggravated sexual assault of E.W. and in count two with two separate acts of indecency with E.W. The jury was charged in the disjunctive as to the offenses alleged in each count. Appellant complains trial counsel should have objected to the disjunctive charge because it permitted the jury to return a general verdict of guilt on each count without requiring unanimity on a specific offense.

■ The court of criminal appeals has made clear that every act of sexual assault or every act of indecency alleged in an indictment is a separate criminal offense—not simply different methods of committing the same offense, for which the defendant may be convicted. *See Francis v. State,* No. 1132–98, slip op. at 6–7, 1999 WL 993669, at *2 (Tex.Crim.App. Nov.3, 1999) (reh'g granted);[2] *Ex parte Goodbread,* 967 S.W.2d 859, 861 (Tex.Crim.App. 1998). Here, it is not apparent from the record why the trial court charged the jury in the disjunctive for separate offenses on each count, instead of charging the jury in a separate application paragraph for each incident alleged in the indictment, or why trial counsel did not object to the disjunctive charge. Consequently, we are unable to conclude counsel's performance was deficit by not objecting to the charge as given. *See Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066; *Thompson v. State,* 9 S.W.3d 808, 812–15 (Tex.Crim.App.1999); *Jackson v. State,* 877 S.W.2d 768, 771–72 (Tex.Crim. App.1994). Furthermore, because the evi-

---

2. We recognize that because *Francis* is not yet final, it is not a part of the jurisprudence of this State. *See Yeager v. State,* 727 S.W.2d 280, 281 n. 1 (Tex.Crim.App.1987).

dence was sufficient to support either of the offenses alleged in each count, counsel may have decided not to object to the charge to shield appellant from potentially being convicted for four criminal offenses, instead of two. Points five and six are overruled.

In point nine, appellant argues he was denied due process of law when the State was not required to allege which specific act of misconduct it relied upon for conviction. As a general rule, where evidence of multiple occurrences of the acts alleged in the indictment are presented at trial, upon request, the State is required to elect which of the instances of the charged acts it will rely for purposes of conviction. *See Scoggan v. State,* 799 S.W.2d 679, 680 n. 3 (Tex.Crim.App.1990). Admittedly, appellant did not request an election. Thus, no error is implicated. Point nine is overruled.

In point ten, appellant contends trial counsel was ineffective by failing to request an election. There is no evidence in the record why counsel did not make such a request. However, because the decision to exercise the right to request an election is a matter of trial strategy, we must assume that counsel chose not to request an election as a result of reasonable professional judgment. *See Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066; *Thompson,* at 812–15; *Jackson,* 877 S.W.2d at 771; *see also Brown v. State,* 6 S.W.3d 571, 577 (Tex.App.—Tyler 1999, pet. ref'd) (counsel could have reasonably believed that not requesting an election was the most prudent and effective course). Point ten is overruled.

### EXTRANEOUS OFFENSE EVIDENCE

In points seven and eight, appellant contends the trial court erred by overruling his motion for mistrial after the State attempted to introduce evidence about the conduct of appellant's father Phillip Mayo, who was also charged with sexually assaulting the girls, but was tried separately. He further contends he was denied effective assistance of counsel because trial counsel was forced to change his trial strategy as a result of the trial court's rulings in this regard. A trial court's denial of a motion for mistrial is reviewed under an abuse of discretion standard. *See Kipp v. State,* 876 S.W.2d 330, 339 (Tex.Crim.App.1994).

Apparently, the trial court granted an oral motion in limine prior to trial prohibiting any mention of Philip Mayo's alleged sexual abuse. Appellant specifically complains of three instances where the State nevertheless made references to Philip Mayo's alleged sexual misconduct with E.W. and N.W. In the first instance, appellant complains of the following opening argument by the State:

> And the evidence will show that [E. W.], [N.W.] later moved in with Jon Mayo's father Philip Mayo, and that when [E.W.] found the faith and found the courage to tell, she told this man's father what her father had been doing. She told her grandfather. And the evidence will show that rather than going to his son and saying this is wrong, you need help, that he, too, began—

Appellant objected that this argument was an attempt by the State to introduce alleged extraneous offenses committed by another individual which would tend to implicate and prejudice him. The trial court sustained the objection, however refused to give an instruction to disregard the argument.

In the second instance, the State was questioning police officer Quinton Williams about a conversation between N.W. and deceased police officer Trish Craig. Williams testified that the subject matter of the conversation was sexual abuse by the step-grandfather. Appellant objected that the testimony constituted "extraneous offense allegedly committed by another individual to infer guilt and/or prejudice" him. The trial court sustained the objec-

tion and instructed the jury to disregard the complained of testimony.

Finally, in the third instance, appellant complains of the following testimony by E.W. during the State's direct-examination:

Q. When they [E. W.'s mother and appellant] separated, where did you live?

A. With my grandfather, my pa-pa.

Q. Your pa-pa. And is that [appellant's] father?

A. Yes.

Q. Okay. Who else lives there?

A. My uncle was. His—at the time his girlfriend, Chris, [N. W.], me, and my pa-pa.

Q. Did your mother live there?

A. No.

Q. Did Jamie live there?

A. No.

Q. So it was you and [N. W.]?

A. Yes.

Q. Pa-pa?

A. Yes.

Q. His girlfriend?

A. No. She was gone by that time.

Q. Okay. Was she gone right away or did she leave shortly after youall moved in?

A. She left before we moved in.

Q. Okay. And where did you and [N.W.] sleep?

A. *On the couches, and then I'd end up in his bed.* [Emphasis added]

Appellant objected that the testimony was "evidence of an extraneous offense allegedly committed by Phillip Mayo who is not a co-defendant." The trial court overruled the objection.

At the close of the State's case-in-chief, appellant again moved for a mistrial on the basis of these three instances and argued that the references to Phillip Mayo forced him to "change [his defensive] strategy," consequently depriving him of effective assistance of counsel. Trial counsel explained: "It was felt by the Defense in terms of outlining strategy that any reference to Phillip Mayo would infer guilt upon Jon Mayo, so the strategy was essentially to try this case free of any influence that Phillip Mayo may have had with respect to these girls." The trial court overruled the motion for mistrial.

■■■■■ Presumably, appellant's contention under this point is that evidence of his father's prior criminal conduct was somehow evidence of other crimes, wrongs, or acts under Texas Rule of Evidence 404(b). TEX.R. EVID. 404(b). Extraneous offense evidence, however, necessarily involves evidence of prior criminal conduct by the *accused. See Watkins v. State,* 946 S.W.2d 594, 597–98 (Tex.App.—Fort Worth 1997, pet. ref'd). If the challenged evidence does not show that an offense was committed or does not connect the defendant to the offense, then it is not evidence of an extraneous offense. *See id.* at 598. Because the complained of argument and testimony do not suggest that appellant had any involvement with or knowledge of any instances of sexual misconduct involving Phillip Mayo and the girls, these offenses were not extraneous offenses as to appellant. *See id.* Consequently, the trial court did not abuse its discretion by denying appellant's motion for mistrial on this basis.

■■■■■ Moreover, our disposition of this issue rejects appellant's contention under point eight that he was denied effective assistance of counsel as a result of the trial court's rulings. Appellant's conclusory statement that counsel was forced to abandon the strategy which he had prepared, thus depriving him of effective assistance of counsel, is not persuasive. Nor does appellant direct this court to authority in support of his proposition. *See Heiselbetz v. State,* 906 S.W.2d 500, 512 (Tex. Crim.App.1995). We conclude the fact that trial counsel may elect to employ or abandon a particular trial strategy as a result of a trial court's ruling which was clearly within the court's discretion does

not deprive a criminal defendant of effective assistance of counsel. Points seven and eight are overruled.

 In point eleven, appellant argues the combined effects of the preceding points coupled with counsel's errors deprived him of effective assistance of counsel. However, appellant has not met his burden to rebut the presumption that trial counsel rendered adequate assistance. To the contrary, it appears counsel vigorously defended appellant during all phases of his prosecution in the trial court. Appellant was entitled to a fair, not a perfect trial. *See Ewing v.* State, 549 S.W.2d 392, 395 (Tex.Crim.App.1977), *overruled on other grounds, Hurley v. State,* 606 S.W.2d 887, 890 (Tex.Crim.App. [Panel Op.] 1980). Isolated acts or omissions of counsel regarding procedural or evidentiary issues generally do not constitute a breach of legal duty by an accused's counsel. *See id.* After examining the totality of counsel's representation, and given our disposition of appellant's preceding points, we cannot conclude he has affirmatively demonstrated that he was deprived of his right to effective assistance of counsel as a result of the combined effect of the alleged errors. *See id.* Point eleven is overruled.

### JURY ARGUMENT

 In point twelve, appellant argues the trial court erred by overruling his motion for mistrial due to the State's improper jury argument. He complains of the following closing argument during the guilt/innocence phase:

> Ladies and Gentlemen, if you find this man not guilty, you're sending those girls a message that they're untruthful, they're not believable. You're sending a message to the D.A.'s office and to the police that if you just have the words "custody battle," in an aggravated sexual assault case, indecency case, in the very face of very powerful medical evidence, forget it. We're never going to believe it. Don't file the case, don't take the case, don't investigate the case.

Throw it away. It can't be true. Is that what you want to do? Because that's what your verdict would say.

The trial court sustained appellant's objection that the argument was an improper plea for law enforcement, and instructed the jury to disregard the objectionable statement. Notwithstanding the curative instruction, appellant asserts harm on the basis that he was convicted and given the maximum sentences. Appellant's conclusory assertion is not compelling. We agree with the State that because appellant fails to present any argument or authority to negate the presumption that the instruction to disregard cured any harm, he has waived error, if any. *See Gardner v. State,* 730 S.W.2d 675, 696 (Tex.Crim. App.1987), *cert. denied,* 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987); *Bridgewater v. State,* 905 S.W.2d 349, 354 n. 5 (Tex.App.—Fort Worth 1995, no pet.). Point twelve is overruled.

### CONCLUSION

We affirm the trial court's judgments.