COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-236-CR
  
  
JAMES COREY HINES                                                            APPELLANT
  
V.
  
THE STATE OF TEXAS                                                                  STATE
  
  
------------
 
FROM THE 211TH DISTRICT COURT OF DENTON COUNTY
 
------------
 
OPINION
 
------------
        On 
appeal, Appellant James Corey Hines raises two points alleging ineffective 
assistance of counsel during various stages of his punishment trial. We will 
affirm.
I. Factual and 
Procedural Background
        On 
November 21, 2002, nineteen-year-old Appellant was charged by indictment with 
one count of indecency with a child—his thirteen-year-old half-sister, L.H.—for 
touching her breast and genitals on July 8, 2002. He was also charged with three 
counts of aggravated sexual assault: (1) for intentionally or knowingly causing 
his sexual organ to contact L.H.’s anus on July 22, 2002; (2) for 
intentionally or knowingly causing his sexual organ to contact L.H.’s sexual 
organ on September 1, 2002; and (3) for intentionally or knowingly causing his 
sexual organ to contact L.H.’s anus on September 23, 2002. After being 
admonished and apprised of his rights, Appellant signed a judicial confession 
admitting that he had committed the offenses for which he was being charged, 
pleaded guilty to all four offenses, and decided that a jury would assess his 
punishment.
        On 
June 16 and 17, 2003, the State presented evidence before a jury concerning 
Appellant’s punishment. Upon consideration of all of the evidence and 
testimony presented, the jury assessed punishment at two years’ confinement, 
probation recommended, for the indecency with a child count and fifteen years’ 
confinement for each of the three aggravated sexual assault counts. The trial 
court then signed a judgment on Appellant’s guilty pleas, ordering Appellant 
to serve the three fifteen-year sentences concurrently and ordering 
Appellant’s two-year sentence probated for ten years, to run consecutively to 
the other three sentences.
        Subsequently, 
the trial court granted Appellant’s trial counsel’s motion to withdraw and 
appointed new appellate counsel. On July 18, 2003, Appellant filed a verified 
motion for new trial on the grounds that his plea was not voluntary, he received 
ineffective assistance of counsel, and the best interest of justice required a 
new trial. The trial court conducted a hearing on Appellant’s motion for new 
trial on August 28, 2003, at which Appellant’s trial counsel testified to his 
trial strategy. After considering all of the testimony and evidence presented, 
the trial court denied Appellant’s motion for new trial.
II. Points
        In 
two points, Appellant contends that he was denied his right to effective 
assistance of counsel during his trial on punishment.[1]  
In his first point, Appellant argues that trial counsel rendered ineffective 
assistance in six areas that were also addressed during the hearing on his 
motion for new trial: (1) counsel’s decision not to introduce military 
discharge records; (2) counsel’s questioning of a sex abuse therapist who 
testified on behalf of Appellant; (3) counsel’s decision not to call G.H., the 
father of both Appellant and the victim; (4) counsel’s decision not to 
introduce a videotape that included some of L.H.’s statements; (5) counsel’s 
failure to object during the State’s closing argument; and (6) counsel’s 
decision not to call as a witness the interrogating officer who took 
Appellant’s confession.  In his second point, Appellant asserts that 
trial counsel also rendered ineffective assistance in failing to conduct any 
meaningful voir dire of the venire panel assembled for the punishment 
phase.  We will address each point in turn.
III. Law of 
Ineffective Assistance of Counsel
        The 
Sixth Amendment to the United States Constitution affords criminal defendants 
the right to reasonably effective assistance of counsel.  U.S. Const. amend. VI; Yarborough v. 
Gentry, __ U.S. __, 124 S. Ct. 1, 4 (2003); Garcia v. State, 57 
S.W.3d 436, 440 (Tex. Crim. App. 2001), cert. denied, 537 U.S. 1195 
(2003).  We apply a two-pronged test to ineffective assistance of counsel 
claims, including challenges concerning counsel’s assistance at 
punishment.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 
2052, 2064 (1984); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 
1999); Hernandez v. State, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).
        First, 
Appellant must show that his counsel’s performance was deficient.  Strickland, 
466 U.S. at 687, 104 S. Ct. at 2064.  In evaluating the effectiveness of 
counsel under the first prong, we look to the totality of the representation and 
the particular circumstances of each case.  Thompson, 9 S.W.3d at 
813.  The issue is whether counsel’s assistance was reasonable under all 
the circumstances and prevailing professional norms at the time of the alleged 
error.  Strickland, 466 U.S. at 688-89, 104 S. Ct. at 2065.
        “[C]ounsel 
is strongly presumed to have rendered adequate assistance and made all 
significant decisions in the exercise of reasonable professional 
judgment.”  Id. at 690, 104 S. Ct. at 2066.  Our scrutiny of 
counsel’s performance must be highly deferential, and every effort must be 
made to eliminate the distorting effects of hindsight.  Id. at 689, 
104 S. Ct. at 2065.  When the record is silent as to possible trial 
strategies undertaken by defense counsel, we will not speculate on the reasons 
for those strategies.  See Jackson v. State, 877 S.W.2d 768, 771 
(Tex. Crim. App. 1994).  Thus, the record must be sufficiently developed to 
overcome the strong presumption that counsel provided reasonable 
assistance.  Bone v. State, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 
2002) (citing Thompson, 9 S.W.3d at 813-14).
        Second, 
Appellant must show that the deficient performance prejudiced the defense.  
Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.  The second prong 
of Strickland requires a showing that counsel’s errors were so serious 
that they deprived the defendant of a fair trial, i.e., a trial whose result is 
reliable.  Id. at 687, 104 S. Ct. at 2064.  In other words, 
Appellant must show there is a reasonable probability that, but for counsel’s 
unprofessional errors, the result of the proceeding would have been 
different.  Id. at 694, 104 S. Ct. at 2068.  A reasonable 
probability is a probability sufficient to undermine confidence in the 
outcome.  Id.  The ultimate focus of our inquiry must be on the 
fundamental fairness of the proceeding whose result is being challenged.  Id. 
at 697, 104 S. Ct. at 2070.
IV. Issues 
Addressed During the Motion for New Trial Hearing
        Appellant’s 
first point concerns six alleged deficiencies that were raised and addressed by 
his trial counsel during the hearing on his motion for new trial.  In his 
brief, Appellant acknowledges that trial counsel was given the opportunity to 
explain his trial strategy with respect to each of the challenged decisions, but 
he maintains that counsel’s performance was nevertheless deficient.  We 
disagree.
        A.     Not 
Introducing Appellant’s Military Discharge Records
        Appellant 
contends that trial counsel’s performance was deficient because he failed to 
introduce military discharge records that would have shown Appellant was 
emotionally delayed.  At the hearing on the motion for new trial, however, 
trial counsel explained that he did not introduce the military discharge records 
because they showed a diagnosis of impulse control disorder and Appellant’s 
history of anger problems that he did not want to make known to the jury.  
Indeed, the discharge records indicate, among other things, that Appellant 
“was evaluated for anger problem[s] and hearing voices” and had been 
diagnosed with “impulse control disorder.”  Counsel explained he did 
not want the jury to believe that Appellant had no control over himself or was 
“sick”; rather, he wanted the jury to believe that Appellant made a 
“stupid mistake” with his half-sister.  Therefore, counsel testified 
that he called witnesses who would demonstrate through testing and their 
expertise that Appellant had “a low probability of doing this again” so that 
the jury would be inclined to recommend probation and treatment.
        B.     Questioning 
of a Sex Abuse Therapist
        Appellant 
also complains that counsel’s assistance was constitutionally infirm because 
he failed to thoroughly question Emily Elfurd, a sex abuse therapist who 
testified on Appellant’s behalf.  Specifically, Appellant contends that 
counsel never explored with Elfurd the availability of various types of 
treatment in prison or the fact that no treatment was available until the last 
eighteen months of incarceration.  Further, Appellant points out that 
counsel never elicited testimony from Elfurd that “Appellant did not exhibit 
the characteristics of a classic pedophile.”
        Counsel 
testified that he did not want to call an expert to the stand who would be able 
to say what was wrong with Appellant; rather, he “just wanted her to be able 
to say, yeah, . . . he’s not terrible.  He’s good for counseling. . . . 
He will probably be okay if he can get counseling while he’s on 
probation.”  Moreover, counsel stated that he did not want the jury to 
concentrate on the possibility of treatment in prison; instead, he wanted the 
jury to think that Appellant could get treatment from a variety of available 
places outside of prison.
        Counsel 
further testified that he did not question Elfurd about Appellant’s not being 
a pedophile because he feared the State would call a rebuttal expert witness who 
“would probably have testified to something different.” Counsel explained 
that after his insanity defense “washed out,” he did not want to show 
Appellant as having impulse control disorder but wanted to portray Appellant as 
“a kid who had a hormonal problem, . . . fell in love with his sister, and had 
sex with [her].”  Additionally, counsel did not want the judge or the 
prosecutors to think that Appellant was sick because he was trying to avoid 
having Appellant’s sentences run consecutively.
        C.     Not 
Calling G.H. as a Witness
        Next, 
Appellant argues that his counsel rendered ineffective assistance by failing to 
call G.H., the father of both Appellant and L.H., as a witness.  During the 
hearing on Appellant’s motion for new trial, Appellant called G.H., who 
testified that he was never contacted by Appellant’s trial counsel and that 
“[he] would like to have seen [Appellant] get probation.”  But G.H. 
further testified, “Being the father of both the victim . . . and the 
Defendant, it was hard to weigh whose interest I had to look out for 
most.”  On cross-examination, G.H. acknowledged that he had served as a 
police officer for twenty-three years and understood the seriousness of 
Appellant’s crime, which is a first degree felony.  When G.H. was asked, 
“And you understand that when people commit crimes like that, . . . there is a 
punishment that needs to be paid?  Isn’t that correct,” he responded, 
“Yes, ma’am.”
        Trial 
counsel stated that he never contacted G.H. to testify on behalf of Appellant 
because he thought it was too risky to put someone like G.H. on the stand.  
Counsel also stated, however, that he had prepared to cross-examine G.H. in the 
event that the State called him to testify.  Counsel reasoned, “[I]n a 
situation like this that was pretty volatile, I couldn’t trust him to get on 
the witness stand and be a good witness for his son when it was his daughter who 
was molested by his son.”  Further, counsel testified that G.H. did not 
indicate that he cared about Appellant because he had not gone to the police 
station with him and had not maintained any contact with Appellant during the 
time Appellant was charged and tried.  In fact, Appellant’s mother 
testified at trial that G.H. had already turned his back on Appellant, but she 
offered her assurances to the jury that she had been and would continue to 
support him regardless of whether Appellant got probation, which she thought 
would be more beneficial to Appellant than sending him to the penitentiary.
        D.     Not 
Introducing a Videotape of L.H.’s Statements
        Appellant 
further argues that he received ineffective assistance when his trial counsel 
did not introduce a videotape that allegedly contained a recitation from L.H. 
that the sexual abuse occurred less frequently than she described at 
trial.  During the hearing on Appellant’s motion for new trial, Appellant 
did not offer the videotape to compare it to L.H.’s trial testimony or to 
demonstrate what testimony should have been offered to the jury.  Instead, 
Appellant merely questioned his trial counsel about why he did not show the 
videotape, which he alleged could have been used to impeach L.H.’s testimony 
regarding the frequency of the sexual assaults.
        Counsel 
agreed that he asked few questions of L.H., but he testified that he did not 
want to hurt Appellant by attacking L.H. or by keeping her on the stand any 
longer than was necessary.  Counsel testified that L.H. “was a very good 
little witness,” and he did not want to “hack[] off the jury” by accusing 
her of being a liar.  Counsel stated that because Appellant had admitted to 
the allegations contained in the indictment and had pleaded guilty to all four 
offenses, “I didn’t see any point in saying, aha, he did it only four times 
and not seven.”  According to counsel, “The bottom line on the video 
was that she said he did it,” and because Appellant admitted that he committed 
the sexual offenses, counsel saw no “reason to have yet another piece of 
evidence brought down here against him.”
        E.     Failing 
to Object to the State’s Closing Argument
        In 
addition, Appellant alleges that trial counsel acted ineffectively when he did 
not object to the State’s labeling Appellant a “predator” during closing 
argument. Counsel gave the following explanation for his decision not to object:

In . . . 
a case like this, unless . . . the statement in the final argument by the 
prosecution is so bad that it is going to call for a reversal, I don’t jump up 
and object to it and call attention to it. I let it go. I let it slide. And then 
I make my argument, pointing to their argument and . . . scoffing at it, that he 
is not a predator, he’s not a monster, he is . . . a kid that made a mistake. 
If . . . sometimes when you object to . . . the statements, all you are doing is 
demonstrating that you really believe that that is what this person is or you 
call attention to it.  And I don’t do that unless it is bad enough that . 
. . there would be a reversal, and sometimes not even then depending on what 
kind of jury I think I have.
 
Appellant then asked 
counsel whether he thought it was even questionable in his mind as to whether 
the State’s argument was improper.  Counsel responded, “I . . . may 
have objected to it if I thought it would have made a good record or 
something.  But at the time, I . . . didn’t care because I didn’t think 
it was that bad[,] and I didn’t want to call attention to it.”
        F.     Not 
Calling Appellant’s Interrogating Officer as a Witness
        Finally, 
Appellant asserts that trial counsel’s assistance was constitutionally 
deficient because he did not call as a witness Corey Cook, who was the 
interrogating officer that obtained Appellant’s confession.  
Appellant’s trial counsel agreed that he was aware that a recording of 
Appellant’s interrogation revealed that Officer Cook had told Appellant 
“words to the effect that he would try to help him out[,] or he thought he 
needed counseling or probation or something like that.”  Appellant 
followed up, asking counsel why he had not called Officer Cook to testify to 
help mitigate Appellant’s punishment.
        Counsel 
explained that he thought Officer Cook’s statements were “part of his 
interrogation technique to get [Appellant] to open up and confess to the 
offenses.  Counsel stated that he would never call a police officer to 
testify on behalf of a defendant because, in terms of trial strategy, “you 
cannot trust them” as they “normally . . . don’t help you.”  From 
counsel’s past experiences, he said, “I have seen that a hundred times in 
the videotapes of interrogations, . . . [but] he was not going to come in here 
and testify that [Appellant] needed to have probation or counseling or 
whatever.”
        Appellant 
then asked counsel whether it made any difference that Officer Cook was a friend 
of Appellant’s father, Appellant, and the victim. While acknowledging that 
they were all friends, counsel testified to his belief that their friendship 
would not have made a difference and stated, “[I]t’s never been my 
experience ever that a police officer has been called by the defense and 
actually helped the defense ever.”  Additionally, counsel testified that 
while Officer Cook was in the hall during trial, despite “pass[ing] each other 
quite a few times, . . . [h]e never indicated to me that he would testify on 
[Appellant’s] behalf.”
        Appellant’s 
trial counsel stated that his “whole strategy in the trial . . . was to say 
that [Appellant] stood up and took responsibility for his actions and confessed 
to the police and . . . jury and, therefore, the jury ought to cut him some 
slack.”  Counsel stated that he was worried that if Officer Cook 
testified, Appellant’s videotaped statement to the police would have “come 
screaming into evidence,” which would have shown that Appellant “did not 
really take responsibility like we said he did.”  Counsel testified that, 
while he was “glad” the State did not call Officer Cook, had the State done 
so, he was prepared to cross-examine the officer.
        G.     Our 
Analysis of the Six Alleged Deficiencies
        In 
his brief, Appellant points to the six alleged deficiencies and recites trial 
counsel’s explanations for the decisions he made, but Appellant offers no 
counter-arguments whatsoever demonstrating how or why trial counsel’s 
assistance was constitutionally infirm.  In accordance with precedent from 
the Texas Court of Criminal Appeals, we have previously stated that a criminal 
defendant is not entitled to errorless or perfect counsel.  Mayo v. 
State, 17 S.W.3d 291, 300 (Tex. App.—Fort Worth 2000, pet. ref’d) 
(citing Ewing v. State, 549 S.W.2d 392, 395 (Tex. Crim. App. 1977), overruled 
on other grounds, Hurley v. State, 606 S.W.2d 887, 890 (Tex. Crim. 
App. [Panel Op.] 1980)).  Rather, we are to examine whether counsel’s 
assistance was reasonable under all the circumstances and prevailing 
professional norms at the time of the alleged error, giving great deference to 
trial counsel’s strategy and professional judgment.  See Strickland, 
466 U.S. at 688-89, 104 S. Ct. at 2065.
        We 
have carefully examined the arguments as detailed above, the evidence offered, 
and the explanations given by trial counsel at the hearing on Appellant’s 
motion for new trial as to the allegations of ineffective assistance of 
counsel.  Based on the totality of the representation and the particular 
circumstances of this case, we conclude that the record does not reveal 
deficient performance by Appellant’s trial counsel sufficient to overcome the 
strong presumption that counsel’s conduct fell within the wide range of 
reasonable professional assistance.  See id., 466 U.S. at 
687, 104 S. Ct. at 2064; Bone, 77 S.W.3d at 833 n.13; Thompson, 9 
S.W.3d at 813-14.  Accordingly, we overrule Appellant’s first point.
V. Voir Dire
        Appellant’s 
second point is that he received ineffective assistance of counsel because his 
trial counsel asked no meaningful questions during voir dire.  Although 
Appellant did not raise this issue in the proceedings concerning his request for 
a new trial, he may raise this point for the first time on appeal.[2]  See Robinson v. State, 16 S.W.3d 808, 
809-11 (Tex. Crim. App. 2000) (stating that a defendant does not waive an 
ineffective assistance claim by failing to raise it first at trial or in a 
motion for new trial).  The State responds that, in light of the 
information it gleaned during its voir dire, it was unnecessary for 
Appellant’s trial counsel to revisit many of the issues covered or to conduct 
a more extensive voir dire.  Thus, the State argues that Appellant’s 
trial counsel’s conduct was not deficient under the first Strickland 
prong. See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Thompson, 
9 S.W.3d at 813.
        Appellant 
points out that the reporter’s record shows that the State’s questioning of 
the veniremembers spans seventy-six pages, while Appellant’s counsel’s 
questioning covers just over eight pages.  Appellant argues that trial 
counsel failed to conduct a meaningful voir dire and characterized counsel’s 
actions as “chatting briefly with the jury panel” and inadequately 
questioning the panel.  He states, “there is no trial strategy that 
permits counsel to stand mute during voir dire.”  Appellant does not 
challenge trial counsel’s use of peremptory strikes or the challenges for 
cause he used, with the State’s agreement, to remove the thirteen 
veniremembers who said they could not consider probation.
        Appellant 
directs us to a case in which the Texarkana Court of Appeals held that the 
appellant’s trial counsel’s failure to conduct a meaningful voir dire and 
his use of two peremptory strikes on veniremembers previously excused by the 
court constituted ineffective assistance, requiring a reversal of the conviction 
and a remand for a new trial.  Goodspeed v. State, 120 S.W.3d 408, 
413 (Tex. App.—Texarkana 2003, pet. granted).[3]  
At the outset, we respectfully acknowledge that as a court of equal jurisdiction 
to that of the Texarkana court, we are not bound by Goodspeed. See 
Cannon v. State, 691 S.W.2d 664, 679-80 (Tex. Crim. App. 1985) (“[C]ourts 
are not bound by decision of other courts of equal jurisdiction.  The power 
to establish precedent is lodged in courts of superior jurisdiction.”), cert. 
denied, 474 U.S. 1110 (1986).
        Even 
were we to follow Goodspeed, which we decline to do, we read Goodspeed 
as being factually distinguishable from the case before us now.  In Goodspeed, 
neither the State nor defense counsel questioned the veniremembers about whether 
they could consider the full range of punishment, including community 
supervision, in the context of a sexual assault case.  Goodspeed, 
120 S.W.3d at 411-12.  In contrast, the State in the case before us told 
the veniremembers that, with respect to punishment, they “need[ed] people [who 
could] keep an open mind to the fact that they might hear evidence on either end 
of the spectrum.”  The State then informed the veniremembers of the 
punishment range and again told the panel that “to sit on a jury, they have to 
keep an open mind to the fact that there is a situation out there where they 
could consider . . . the idea of giving probation to a person that they thought 
really deserved it.”
        Appellant 
argues that the State used a flawed hypothetical as it began its questioning of 
the veniremembers about whether they could consider probation.  He points 
to the portion of the State’s voir dire during which the State informed the 
jury that in special situations, a defendant could be deserving of 
probation.  The State illustrated saying, “when we are talking about 
probation, we are talking about a minimum situation. I mean, the absolute . . . 
minimal case, the perfect person . . . that is out there and the least offensive 
way that the offense can be committed.”  As the State continued asking 
the veniremembers whether they could consider the full range of punishment, 
including probation, the State continued its discussion and questioning about 
whether probation might be appropriate:

But to 
be able to sit on a jury, you have to be able to keep an open mind at this 
point. I mean, once you start thinking about facts and . . . hearing what is 
going on, then . . . at that point, . . . you don’t have to start at 
probation. . . . [Y]ou don’t have to start at life in the penitentiary.  
But you just have to be open minded to the fact that there might be a situation 
out there -- and it may not be . . . this case or this person, just there might 
be a case out there that you would hear the facts where you would keep an open 
mind and, if you really were convinced that the evidence was there and convinced 
you this is a really good person that just made . . . a terrible slip-up and . . 
. I think that probation would benefit both that person and society and . . . 
getting treatment -- at this point could there be a case out there that if you 
-- if the facts allowed it and the law allowed it and justified it, would you be 
able to give it?
 
        We 
disagree that the phrasing of the State’s hypothetical precluded the State 
from determining if prospective jurors had a bias or prejudice against 
considering probation as a minimum sentence.  The thrust of the State’s 
explanatory information, hypotheticals, and questions was to suggest that there 
might be circumstances when probation is warranted and to determine whether any 
of the veniremembers could not keep an open mind to the full range of punishment 
regardless of what the facts and evidence showed.  See Sadler v. State, 
977 S.W.2d 140, 142 (Tex. Crim. App. 1998) (“[Jurors] must be able, in a 
sense, to conceive both of a situation in which the minimum penalty would be 
appropriate and of a situation in which the maximum penalty would be 
appropriate.”) (citation omitted).  While Appellant complains on appeal 
that the State’s questioning was inadequate for Appellant to determine juror 
bias and prejudice toward probation, and that his trial counsel should have 
objected to the State’s flawed hypothetical, a careful reading of the record 
reveals that the State was ferreting out bias and prejudice toward any 
consideration of probation and provided sufficient information for Appellant to 
make challenges for cause and peremptory strikes.
        Ultimately, 
the State questioned the forty-five veniremembers about whether they would be 
unable to consider giving probation to Appellant.  Thirteen people stated 
that they could not consider giving probation.  When Appellant’s counsel 
examined the panel, he stated that he was not going to go over the same issue of 
whether the veniremembers could consider the full range of punishment.  See, 
e.g., Smith v. State, 968 S.W.2d 490, 494 (Tex. App.—Texarkana 1998, no 
pet.) (stating that because the State “accurately informed and then questioned 
the venire about their ability to consider the entire range of punishment, . . . 
there was no need for counsel to re-ask the same questions”).
        Instead, 
counsel said he would only ask one question of the thirty-two veniremembers who 
said they could consider probation: whether they could be fair to both 
sides.  Each one responded affirmatively to his question.  With the 
State’s agreement, defense counsel then requested that the thirteen 
veniremembers who stated that they could not consider probation be stricken for 
cause.  Both sides then exercised their peremptory strikes, and there is no 
evidence that Appellant’s trial counsel “wasted” any of his peremptory 
strikes.  See Goodspeed, 420 S.W.3d at 413 (stating that 
Goodspeed’s attorney “wasted two peremptory strikes,” which further 
required the court to find his performance deficient).
        In 
the case at bar, the record does not reveal the reasons or strategy for trial 
counsel’s actions during voir dire because ineffectiveness of counsel on that 
ground was not raised in Appellant’s motion for new trial, and we will not 
speculate on the reasons for counsel’s trial performance.  See Jackson, 
877 S.W.2d at 771.  Thus, Appellant’s complaints on appeal regarding his 
trial counsel’s manner of conducting voir dire concern actions that may or may 
not be grounded in sound trial strategy, but the record is silent as to 
counsel’s reasons for proceeding as he did.  We will not “reverse a 
conviction on ineffective assistance of counsel grounds when counsel’s actions 
or omissions may have been based upon tactical decisions, but the record 
contains no specific explanation for counsel’s decisions.”  Bone, 
77 S.W.3d at 830; see also Diaz v. State, 110 S.W.3d 181, 185 (Tex. 
App.—San Antonio 2003, pet. ref’d); Patterson v. State, 46 S.W.3d 
294, 306 (Tex. App.—Fort Worth 2001, no pet.).  Accordingly, we overrule 
Appellant’s second point.[4]
VI. Conclusion
        Having 
overruled both of Appellant’s points, we affirm the trial court’s judgment.

 
 
                                                          ANNE 
GARDNER
                                                          JUSTICE
  
 
PANEL A:   CAYCE, 
C.J.; GARDNER and MCCOY, JJ.
 
PUBLISH
 
DELIVERED: July 1, 2004


NOTES
1.  We observe that, while 
Appellant challenged the voluntariness of his plea in his motion for new trial, 
he does not renew this argument on appeal.
2.  We construe Appellant’s 
argument as a challenge to the adequacy of trial counsel’s voir dire and not 
as a complaint that trial counsel wholly failed to participate in voir 
dire.  Cf. Miles v. State, 644 S.W.2d 23, 24 (Tex. App.—El Paso 
1982, no pet.) (holding that counsel rendered ineffective assistance by, among 
other actions, “not ask[ing] the jury a single question on voir dire”).
3.  The court of criminal appeals 
granted the State’s petition for discretionary review on the following issue: 
“In finding trial counsel ineffective solely upon his conduct during voir 
dire, the court of appeals misapplied and altered the two-pronged standard for 
evaluating a claim of ineffective assistance of counsel.”  Goodspeed 
v. State, No. 03-1882 (Tex. Crim. App. Feb. 18, 2004).
4.  This issue is better raised via 
an application for a writ of habeas corpus.  Tex. Code Crim. Proc. Ann. art. 11.07 
(Vernon Supp. 2004); Rylander v. State, 101 S.W.3d 107, 110 (Tex. Crim. 
App. 2003) (“[T]he record on direct appeal will generally not be sufficient to 
show that counsel’s representation was so deficient as to meet the first part 
of the Strickland standard as [t]he reasonableness of counsel’s choices 
often involves facts that do not appear in the appellate record.”) (internal 
quotations omitted).