

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00493-CR

ANTONIO PEREZ                                                          APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Antonio Perez appeals his convictions for one count of aggravated sexual assault of a child younger than fourteen years of age and one count of indecency with a child. In one issue, Perez argues that the evidence was insufficient to support his convictions. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

On January 8, 2007, just after school resumed from Christmas break, Riverside Middle School's orchestra director, Jack Lee Henson Jr., noticed N.L. and her friend standing in the back of the classroom, acting like they wanted to talk to him. N.L. was twelve years old at the time. She was sobbing and visibly shaken. Henson took the girls into an adjacent room, where N.L. confided that her uncle, Perez, had been touching her for the past seven years and that he had touched her during that Christmas break. Henson asked N.L. if Perez had touched her in a private area that he should not have touched, and she nodded her head in agreement. She told Henson that Perez had threatened to harm her family if she told anyone. Henson told the school's counselor and CPS what N.L. had told him.

A Cook Children's Hospital nurse conducted a sexual assault examination on N.L., and a Child Protective Services employee interviewed N.L. During the interview, N.L. said that Perez had sexually assaulted her over fifty times and detailed several incidents of sexual assault or inappropriate behavior by Perez. At Perez's trial over three years after the interview, N.L. testified that she could remember only a few incidents and that, contrary to what she had said in her interview, she did not recall him touching her sexual organ with his hand or licking her breasts. N.L. said that she was telling the truth during that interview but that she had "tried to take it out of [her] mind so [she] wouldn't remember it."

2

Perez was charged with three counts of aggravated sexual assault of a child and with one count of indecency with a child. At trial, N.L.'s mother Martina testified that Perez is her sister's husband. Martina said that her sister and Perez had lived with her and her family for about three months in 2002, when N.L. was eight years old. The Perezes moved into a nearby house that year and lived there until 2009. Martina first learned from N.L.'s school counselor that Perez had sexually assaulted N.L. Prior to that, Martina had no knowledge about the sexual assaults, but she recalled at trial that N.L. would cross her arms over her chest when she was around Perez and that she had told her mother that she did not want to go near him. Martina also testified that during Thanksgiving 2006, when N.L. was twelve years old, N.L. and her brother George went to Perez's house to borrow a pan for Martina to use to make tamales. George returned home without N.L., and N.L. later arrived with Perez. When they arrived, Perez told Martina that N.L. had stepped on the gas pedal while he was driving, and N.L. was scolded.

Martina testified that, to her knowledge, there was never a time when Perez and N.L. were alone together while Perez was living in Martina's house and that, after Perez moved out, he never babysat N.L. She further testified, however, "I don't know how he would do it when we were at our house but it would seem that everybody would have to go outside and it was just him and [N.L.] in the house." The only specific time that Martina recalled Perez and N.L.

3

being alone together was Thanksgiving 2006, when Perez drove N.L. home from his house.

N.L. was fifteen at the time of Perez's trial. She testified that Perez had touched her "[a] lot of times" in a way that she did not like, but she could only recall four specific incidents in detail. N.L. testified that Perez had once told her that if she told "anybody about anything," he would "do something to [her] family." N.L. was four or five years old at the time of the first incident; they were in his room, and Perez took out his penis and masturbated in front of her. The next incident that she recalled occurred when she was six or seven years old; Perez took her to the bathroom, kissed her, and touched her breasts under her clothes. He heard a noise and told her to be quiet; when he did not hear the noise again, they left the bathroom. The next incident that N.L. recalled was the Thanksgiving incident when she was about nine or ten years old. Her brother George drove her over to Perez's house to pick up a pan for tamales, and when they were leaving, Perez told N.L. that he needed help finding his keys. George left to go home, and N.L. stayed to look for Perez's keys. Perez told her to go look in his bedroom, and he followed her. He pushed her onto the bed, took off her pants and underwear, took out his penis, and tried to put it inside her female sexual organ. N.L. told him to stop and tried to push him away. Perez grabbed N.L.'s hand and tried to put it on his penis. After again trying to put his penis inside her female sexual organ, he stopped, N.L. ran out of the room with her clothes, she dressed, and she got in his car. On the way back to her house with Perez, he

4

told her to sit close to him; he tried to grab her breasts so she stepped on the gas pedal to make him stop. He yelled at her, and when they got to her house, her mother got mad at her too. N.L. also testified about an incident during a Christmas party at her house when she was in the sixth grade; she was alone in the back room watching T.V. when Perez went into the room. He sat on the bed next to her, put his hand under the covers, and touched her breasts over and under her clothes. N.L. began talking about the T.V. show that she was watching to try to make him stop, and she commented that the man on T.V. was gay. Perez asked her if she knew what that meant, and when N.L. said that she did not, Perez explained that a man is gay "if he sees a girl and he doesn't get hard."

When asked to identify Perez in the courtroom, N.L. said that she did not see him. However, during recess, she talked with the prosecutor, and N.L. later identified Perez during redirect. She explained that she did not recognize him initially because she had not seen him for three or four years and that he looks different: "He wears glasses now. He looks a lot older and shorter."

N.L.'s brother George testified that he had never noticed anything strange about N.L and Perez's interactions but that, looking back on it, Perez was always more affectionate with N.L. than with her siblings and was often alone with her. George recalled that when he and his siblings were with Perez, Perez would send them out for ice cream or a drink, and N.L. would stay behind. George testified that on Thanksgiving 2006 when he went to Perez's house to borrow the tamale pan, N.L. did not want to go with him but that he "kind of forced [her]" by

5

begging her to go. According to George, Perez looked different at the time of trial than he did in 2006, had aged, was losing his hair, and "just looks worried."

At the conclusion of the State's case-in-chief, the State waived one count of aggravated sexual assault.[2]

Perez's wife Celia Perez Rodriquez testified for the defense. She said that on Christmas 2006, she and Perez went to Martina's house around 11:30 p.m. and that, during their two-hour visit, Perez was never alone with N.L. According to Celia, Perez sat at the dining room table the entire time. Celia also testified that she had witnessed two incidents between N.L. and Martina's long-time boyfriend Javier that caused Celia to believe that Javier was the man who had touched N.L. inappropriately. One time, in front of Celia, N.L. came out of the bathroom with a towel wrapped around her, and Javier lifted up the towel; when N.L. told Javier not to do that, he responded that he knew her, "even from [her] behind." During the second incident, Javier asked N.L. for the gum that she was chewing, and she moved close to him and spit the gum from her mouth into his mouth; it appeared to Celia that N.L. was kissing Javier.

The trial court found Perez guilty of one count of aggravated sexual assault of a child by contact (count one) and one count of indecency with a child (count four). The trial court found Perez not guilty of the second paragraph of count

---

[2]The State waived that count because it alleged that Perez intentionally or knowingly caused his sexual organ to contact N.L.'s hand, which does not constitute aggravated sexual assault under the penal code. *See* Tex. Penal Code Ann. § 22.021 (West 2011).

one, charging Perez with aggravated sexual assault of a child by threats and placing in fear, and of the remaining count for aggravated sexual assault by threats and placing in fear (count three). The trial court assessed punishment at twenty-five years' confinement on the aggravated sexual assault count and at twenty years' confinement on the indecency count, and it ordered that the sentences run concurrently.

### III. SUFFICIENCY OF THE EVIDENCE

In his sole issue, Perez argues that the evidence was legally and factually insufficient to support his conviction. Because the Texas Court of Criminal Appeals held in *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010), that there is no meaningful distinction between the factual sufficiency standard and the legal sufficiency standard, we analyze Perez's insufficiency arguments under only the legal sufficiency standard.

### A. Legal Sufficiency Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we determine "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13.

**B. Aggravated Sexual Assault of a Child and Indecency with a Child**

A person commits aggravated sexual assault of a child when that person intentionally or knowingly causes the child's sexual organ to contact the mouth, anus, or sexual organ of another person, and the child is under fourteen years of age. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(iii), (a)(2)(B).

8

A person commits indecency with a child under seventeen years of age when that person engages in sexual contact with the child or causes the child to engage in sexual contact, or when that person, with intent to arouse or gratify the sexual desire of any person, exposes the person's anus or any part of the person's genitals, knowing the child is present or causes the child to expose the child's anus or any part of the child's genitals. *Id.* § 21.11 (West 2011).

Here, Perez was convicted of aggravated sexual assault of a child under fourteen years of age by causing N.L.'s female sexual organ to contact his sexual organ. He was convicted of indecency with a child by touching N.L.'s breasts.

## C. The Evidence was Sufficient

Perez acknowledges that a child victim's testimony, standing alone, is sufficient to support a conviction for sexual assault. *See, e.g., Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978); *West v. State*, 121 S.W.3d 95, 111 (Tex. App.—Fort Worth 2003, pet. ref'd). However, Perez argues that N.L.'s testimony was not sufficient to support his conviction because it was "fraught with contradictions, revisions, and retractions." N.L. testified in detail about four separate incidents, including the Thanksgiving 2006 incident in which Perez attempted to insert his sexual organ into her female sexual organ, and including the Christmas 2006 incident, when he touched her breasts over and under her shirt while she was lying in bed. N.L.'s testimony alone constitutes legally sufficient evidence to support Perez's convictions for aggravated sexual

9

assault of a child under fourteen years of age and for indecency with a child.[3] *See, e.g.*, *Garcia*, 563 S.W.2d at 928; *West*, 121 S.W.3d at 111; *see also* Tex. Penal Code Ann. §§ 21.11, 22.021(a)(1)(B)(iii), (a)(2)(B).

N.L.'s testimony was corroborated by the testimony of her mother Martina, who explained that N.L. was alone with Perez on Thanksgiving 2006 and that N.L. did not want to be around Perez. And N.L.'s brother George testified that Perez was always more affectionate with N.L. than with her siblings and often sent her siblings out of the house while N.L. stayed behind with Perez.

Perez argues that "[t]he clearest exculpatory evidence" was N.L.'s failure to initially identify Perez at trial. However, she ultimately identified him and explained that he looked different than he had the last time that she had seen him three or four years prior to trial. George also testified that Perez looked different at trial than he had three years prior. And even if N.L. had not been able to identify Perez at trial, she testified that she was sexually assaulted by her uncle Antonio Perez, and her family members corroborated that Perez is her

---

[3]The State did not elect which acts by Perez that the State intended to rely on for convictions, nor was it required to do so because Perez did not request such an election. *See Phillips v. State*, 193 S.W.3d 904, 909–10 (Tex. Crim. App. 2006); *Mayo v. State*, 17 S.W.3d 291, 298 (Tex. App.—Fort Worth 2000, pet. ref'd). Additionally, the State was not bound by the dates alleged in the indictment and could have proved that an offense was committed before, on, or after the dates alleged, so long as the dates proved were anterior to presentment of indictment and within the statutory limitation period. *E.g.*, *Scoggan v. State*, 799 S.W.2d 679, 680–681 (Tex. Crim. App. 1990); *see also* Tex. Code Crim. Proc. Ann. art. 12.01(1)(B), (E) (West 2011) (providing that offenses under penal code sections 22.021(a)(1)(B) and 21.11 have no limitation period).

uncle. N.L.'s in-court identification of Perez was not necessary for his conviction. *See Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986) (explaining that identity of perpetrator may be proven by direct or circumstantial evidence); *Couchman v. State*, 3 S.W.3d 155, 162 (Tex. App.—Fort Worth 1999, pet. ref'd) (holding that evidence was sufficient to support conviction when victim failed to identify defendant in court but testified that "Tony" had touched her inappropriately).

Viewing the evidence in the light most favorable to the jury's verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that Perez committed aggravated sexual assault of a child and indecency with a child as charged in count one and count four of the indictment. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. That is, based on the evidence presented at trial, a rational jury could have concluded that Perez intentionally or knowingly caused N.L.'s female sexual organ to contact his sexual organ and that Perez engaged in sexual contact with N.L. by touching her breasts. *See* Tex. Penal Code Ann. §§ 21.11, 22.021(a)(1)(B)(iii), (a)(2)(B). Accordingly, we overrule Perez's sole issue.

## IV. Conclusion

Having overruled Perez's sole issue, we affirm the trial court's judgment.


PER CURIAM

PANEL:  WALKER, MCCOY, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 14, 2011

12